NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241184-U

NO. 4-24-1184

IN THE APPELLATE COURT

FILED
August 1, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| TYREE D. HARRIS, | ) | No. 23CF675 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Frank R. Fuhr, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Harris and Justice Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court vacated defendant's conviction for residential burglary pursuant to the one-act, one-crime doctrine.

¶ 2     A jury found defendant, Tyree D. Harris, guilty of residential burglary (720 ILCS 5/19-3(a) (West 2022)) and armed violence (720 ILCS 5/33A-2 (West 2022)). The trial court sentenced defendant to prison sentences of 12 years on the residential burglary count and 20 years on the armed violence count, to run concurrently. On appeal, defendant contends that these two convictions were based on the same physical act and thus violate the one-act, one-crime rule. For the following reasons, we vacate defendant's conviction for residential burglary.

¶ 3                              I. BACKGROUND

¶ 4     On August 29, 2023, the State charged defendant with (1) home invasion, a Class X felony (720 ILCS 5/19-6(a)(3), (c) (West 2022)), (2) residential burglary, a Class 1 felony (720

ILCS 5/19-3(a), (b) (West 2022)), and (3) armed violence, a Class X felony (720 ILCS 5/33A-2, 33A-3(a) (West 2022)). The charging instrument alleged that defendant committed the offense of home invasion

> "in that said defendant, not a peace officer acting in the line of duty, knowingly, and without authority, entered the dwelling place of Sarah Gustafson, located at [an address in Moline, Illinois], knowing or having reason to know that one or more persons is present within that dwelling place, while armed with a firearm, and used force or threatened the imminent use of force upon any person or persons within said dwelling place, whether or not injury occurs."

The charging instrument next alleged that defendant committed the offense of residential burglary

> "in that said defendant, knowingly and without authority, entered into the dwelling place of Sarah Gustafson, located at [a different address in Moline, Illinois], with the intent to commit therein a theft."

The instrument lastly alleged that defendant committed the offense of armed violence

> "in that said defendant, knowingly, while armed with a dangerous weapon, being a handgun, committed the offense of Residential Burglary, being a felony offense defined by Illinois law."

Count II was later amended so the address was the same as in count I.

¶ 5        Defendant appeared before the trial court on August 31, 2023. The court read the charges to defendant and noted that count II, residential burglary, was based on allegations that were "actually the same act" as the home invasion count, "but it's charged under a different section of the criminal code." On September 19, 2023, defendant entered a plea of not guilty on all the charges.

¶ 6        The jury trial began on June 24, 2024. The evidence and arguments, as relevant to this appeal, are summarized briefly as follows. Sarah Gustafson testified that in August 2023, she lived alone on the second floor of Wellington Apartments in Moline, Illinois. On the night of August 26, 2023, she was woken up by a loud noise coming from her living room. She got out of bed to investigate, walked 10 to 12 steps within her bedroom, and suddenly had a black gun pointed at her chest. The man holding the gun stood there for "maybe three or four seconds," and then he backed up and left the apartment without closing the door behind him. Gustafson immediately ran back to her room and called 911.

¶ 7        When responding officers arrived, Gustafson left her apartment to meet them downstairs and left her apartment door open. She did not see anyone else in her apartment while she was on the phone or when she left her apartment. She led the officers upstairs to her apartment. As she was walking into her bedroom, with one officer behind her and the second still entering her apartment, she heard one of the officers say, "freeze, don't move," and "both officers started running out of [her] apartment." She followed them down the hallway. While in the hallway, she saw her sweatshirt on the floor, though it had previously been in her bedroom. She then saw a flashlight and a purple phone on the ground. At the bottom of the stairs, she also found her purse, which contained her keys, her identification card, and her social security card, which were each previously in different areas in her apartment.

¶ 8        Sergeant Joseph Kluever of the Moline Police Department responded to Gustafson's 911 call at 2:24 in the morning on August 27, 2023. He testified that he met Officer Brady Lemke at Gustafson's apartment complex, and they entered the apartment complex together. They then met Gustafson in the building, and she led them to her apartment. Kluever observed that the front door of Gustafson's apartment looked like it had been kicked in. He testified that

Gustafson entered the apartment first, followed by Lemke, then himself. He used a flashlight to see inside the dark apartment. He testified that there were two closets in the first room they entered, one on the right and one on the left. The doors to both closets were closed when he entered the apartment. After he entered the kitchen, he noticed movement near one of the closets and the front door and saw a Black male running out of the apartment at a full sprint. Kluever yelled at the man to stop and then ran after him. Kluever testified that the front door was closed, even though it was previously open, and he had to reopen it to enter the hallway and chase the man. One of the closet doors was also open. Kluever saw and heard that there were items falling from the man as he was running. The man was eventually able to get away.

¶ 9  The State called several other witnesses, who testified about other aspects of the investigation, including surveillance footage, that connected defendant to the scene of the crime and the handgun he possessed.

¶ 10  The parties presented their closing arguments to the jury. The State reiterated the evidence identifying defendant as the perpetrator of the home invasion, summarizing that defendant entered Gustafson's apartment, Gustafson got up from her bed to investigate the loud noise, and defendant then pointed his gun at Gustafson for a few seconds before leaving the apartment. After the police officers arrived and entered Gustafson's apartment, "[t]hey're confronted by the defendant," who then ran out the front door and down the hallway, dropped several items, and then ran outside. The State posited that after leaving Gustafson's apartment the first time, defendant went onto the roof. The prosecutor then stated:

> "The evidence shows that [defendant] went into that apartment building, picked up items of Sarah's, and he only dropped them and was ditching them when he was chased by the police. That shows the intent to commit the offense of theft.

Armed violence is basically proving residential burglary, the fact that he was armed or carrying a firearm. We spent a long time on that. It's clear the defendant had a firearm."

¶ 11    After being instructed by the trial court, the jury began its deliberations. After the jury notified the court that it was at an impasse on one charge, the parties agreed to have a hung jury on that charge and proceed to a verdict on the other two charges. The jury found defendant guilty of residential burglary and armed violence.

¶ 12    On July 8, 2024, defendant filed a posttrial motion to enter a judgment of acquittal notwithstanding the verdict or, alternatively, vacate his convictions and grant a new trial. Defendant argued only that certain testimony and exhibits and the prosecutor's statements during closing arguments were prejudicial. The trial court denied the motion at a hearing on July 24, 2024. On September 10, 2024, the court sentenced defendant to 12 years of incarceration on the residential burglary charge and 20 years of incarceration on the armed violence charge, to be served concurrently, with day-for-day credit for time served.

¶ 13    This appeal followed.

¶ 14                II. ANALYSIS

¶ 15    Defendant argues on appeal that his convictions for residential burglary and armed violence were based on the same act and thus violate the one-act, one-crime rule. The State disagrees and contends, for the first time on appeal, that defendant's first entrance into Gustafson's apartment was the act that constituted armed violence, while his second entrance was a separate act that constituted residential burglary. Initially, defendant acknowledges that his argument is forfeited because he did not raise it in the trial court. However, he contends that we may review the error for either second-prong plain error or ineffective assistance of counsel. See *People v.*

*Hillier*, 237 Ill. 2d 539, 544-45 (2010). The State maintains that defendant has forfeited this issue or, alternatively, that he has not demonstrated an error. The State nevertheless concedes one-act, one-crime violations constitute reversible error under the second prong of the plain-error doctrine. See *People v. Leach*, 2011 IL App (1st) 090339, ¶ 30; see also *People v. Nunez*, 236 Ill. 2d 488, 493 (2010); *People v. Artis*, 232 Ill. 2d 156, 165 (2009). We review *de novo* whether there has been a violation of the one-act, one-crime rule. *People v. Coats*, 2018 IL 121926, ¶ 12.

¶ 16    Under the plain-error doctrine, the defendant has the burden of showing that a clear or obvious error occurred and either that (1) the evidence is closely balanced or (2) the error was so egregious as to deny the defendant a substantial right and thus a fair trial. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). The first step in the plain-error analysis is to determine whether an error occurred.

¶ 17    The Illinois Supreme Court has laid out a two-step analysis for alleged violations of the one-act, one-crime rule. First, we must determine "whether the defendant's conduct consisted of a single physical act or separate acts." *Coats*, 2018 IL 121926, ¶ 12. If there were multiple acts, we must then ascertain "whether any of the offenses are lesser-included offenses." *Coats*, 2018 IL 121926, ¶ 12. "If none of the offenses are lesser-included offenses, then multiple convictions are proper." *Coats*, 2018 IL 121926, ¶ 12. If, however, there was only a "single physical act," a defendant "may not be convicted of multiple offenses." *People v. Harvey*, 211 Ill. 2d 368, 389 (2004).

¶ 18    For "multiple convictions to be sustained," the charging instrument "must indicate that the State intended to treat the conduct of defendant as multiple acts." *People v. Crespo*, 203 Ill. 2d 335, 345 (2001); see *People v. Williams*, 384 Ill. App. 3d 327, 340 (2008) ("For the State to properly obtain multiple convictions for connected acts that might be treated as a series of offenses,

the State must apportion the acts to the offenses in the charging instrument and at trial."). On the other hand, if the State did not apportion crimes among different actions at trial, it may not do so for the first time on appeal. *Crespo*, 203 Ill. 2d at 345. Allowing the State to change its theory of the case on appeal "would be profoundly unfair," as the "defendant would not have known until the cause was on appeal that the State considered each of the separate [acts] to be separate offenses, and therefore he would not have been able to defend the case accordingly." *Crespo*, 203 Ill. 2d at 343, 345; see Ill. Const.1970, art. I, § 8 (establishing that "the accused shall have the right *** to demand the nature and cause of the accusation"). Therefore, where "the charging instruments reveal that the State intended to treat the conduct of the defendant as a single act," multiple convictions cannot be sustained. *Crespo*, 203 Ill. 2d at 344-45.

¶ 19 When two convictions violate the one-act, one-crime doctrine, the defendant's "sentence should be imposed on the more serious offense and the less serious offense should be vacated." *Artis*, 232 Ill. 2d at 170; see *Harvey*, 211 Ill. 2d at 391, 393 (vacating multiple convictions based on the same physical act); *People v. McLaurin*, 184 Ill. 2d 58, 106 (1998) (vacating one conviction and sentence where two convictions were based on the same physical act); *People v. Carr-McKnight*, 2020 IL App (1st) 163245, ¶ 114 (same). To determine which offense is more serious, "a reviewing court compares the relative punishments prescribed by the legislature for each offense." *Artis*, 232 Ill. 2d at 170.

¶ 20 The State contends that defendant's two convictions may be upheld because they are based on multiple acts—namely, defendant's two separate entries. We disagree, as the State did not apportion the crimes among defendant's entries in the proceedings below.

¶ 21 In the information filed on August 29, 2023, the State charged defendant with residential burglary in that he "knowingly and without authority, entered into the dwelling place

of Sarah Gustafson *** with the intent to commit therein a theft." The State also charged defendant with armed violence in that he "knowingly, while armed with a dangerous weapon, being a handgun, committed the offense of Residential Burglary." Thus, the information did not specify that defendant's charges of armed violence and residential burglary were based on different entries.

¶ 22 Likewise, the State's closing argument included a remark that "[a]rmed violence is basically proving residential burglary, the fact that he was armed or carrying a firearm." *Cf. Williams*, 384 Ill. App. 3d at 340 (rejecting a defendant's one-act, one-crime argument where the State made it clear both in the charging instrument and at trial that the charges were based on different, but related, physical acts). There is thus no indication that the State apportioned the offenses to different acts during trial.

¶ 23 The charging instrument and arguments at trial thus "reveal that the State intended to treat the conduct of the defendant as a single act." *Crespo*, 203 Ill. 2d at 344. It is not enough, as the State argues, that the testimony showed that defendant entered Gustafson's apartment two separate times. It is irrelevant that the evidence could support that defendant took multiple actions—under *Crespo*, we look only to the charging instrument and arguments at trial, not the evidence itself. Because "[t]he State made no attempt *** to apportion these crimes" among defendant's two entries, "it is improper for this court to do so now on appeal." *Crespo*, 203 Ill. 2d at 345.

¶ 24 Consequently, there is only a single physical act at issue in this case, and defendant's two convictions violate the one-act, one-crime doctrine. This violation constitutes reversible error under the second prong of the plain-error doctrine. See *Leach*, 2011 IL App (1st) 090339, ¶ 30; *Nunez*, 236 Ill. 2d at 493; *Artis*, 232 Ill. 2d at 165.

¶ 25 We must therefore vacate the conviction and sentence imposed on the less serious

offense. See *Artis*, 232 Ill. 2d at 170. Residential burglary is a Class 1 felony, which carries a sentence of 4 to 15 years of incarceration. 720 ILCS 5/19-3(a), (b) (West 2022); 730 ILCS 5/5-4.5-30(a) (West 2022). Armed violence is a Class X felony, with a minimum term of 15 years in prison. 720 ILCS 5/33A-2, 33A-3(a) (West 2022). Because the punishment prescribed by the legislature for residential burglary is less than that for armed violence, residential burglary is the less serious offense. Accordingly, we vacate defendant's residential burglary conviction and the corresponding sentence.

¶ 26                                    III. CONCLUSION

¶ 27        For the reasons stated, we vacate defendant's conviction and sentence for residential burglary but affirm in all other aspects.

¶ 28        Affirmed in part and vacated in part.